## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PROGENYHEALTH, INC., :
:
    Plaintiff, :
: CIVIL ACTION
  v. :
: NO. 17-cv-873
CARESOURCE MANAGEMENT GROUP, :
CO., ET AL., :
:
    Defendants. :


**MEMORANDUM**

Joyner, J.                                                  June 15, 2017

Before the Court are Defendants' Motion to Dismiss (Doc. No. 11), Plaintiff's Response in Opposition thereto (Doc. No. 14), Defendants' Reply in Further Support thereof (Doc. No. 15), and Plaintiff's Sur Reply in Further Opposition thereto (Doc. No. 16). For the reasons below, Defendants' Motion is GRANTED.

## I. Facts[1]

Defendant CareSource Management Group, Co. ("CareSource") is a managed health plan provider that contracts with state agencies to provide managed healthcare plans to the public, including to Medicaid and other state-supported healthcare recipients. (Compl. at ¶¶ 10-14). In order to provide adequate services, CareSource regularly enters into subcontractor agreements with specialized

---

[1] The facts are taken from Plaintiff's Complaint. ("Compl.," Doc. No. 1). In line with the standards governing Fed. R. Civ. P. 12(b)(6), all factual allegations are viewed in the light most favorable to the non-moving party. Phillips v. Cty. Of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

vendors. Id. at ¶ 11. For instance, CareSource contracted with ProgenyHealth, Inc. ("ProgenyHealth"), the plaintiff in this case, to provide neonatal medical and case management and utilization management services pursuant to a contract with the State of Ohio. Id. at ¶¶ 7, 12.

Sometime after contracting with ProgenyHealth to provide services in Ohio, CareSource responded to requests for proposals extended by the Georgia Department of Community Health (the "Georgia RFP") and the Indiana Family and Social Service Administration (the "Indiana RFP"). CareSource in turn requested that ProgenyHealth submit Letters of Intent that would permit it to use ProgenyHealth's information in their responses to both RFPs. Id. at ¶ 17. In both RFPs, Defendants praised ProgenyHealth for its achievements and depicted ProgenyHealth as its "partner." Id. at ¶¶ 21, 26, 45. Ultimately, Defendants were awarded the Indiana and Georgia contracts but elected not to enter into a subcontract with ProgenyHealth in either case. Id. at ¶¶ 43, 56.

Plaintiff alleges that Defendants relied on ProgenyHealth's success and reputation in order to win both the Indiana and Georgia contracts. Id. at ¶¶ 39, 53. ProgenyHealth asserts that by neither retaining it for either contract nor compensating ProgenyHealth for the use of its name and reputation, Defendants were unjustly enriched. Id. at ¶¶ 76, 82.

2

ProgenyHealth further alleges that CareSource made promises and misrepresentations to it regarding future dealings under the Indiana and Georgia contracts. Id. at ¶¶ 84, 94. ProgenyHealth asserts that it had 104 meetings with CareSource, many of which centered on the implementation of ProgenyHealth's services under the Indiana and Georgia contracts. Id. at ¶¶ 58-59. ProgenyHealth also points to several email exchanges occurring between September and November 2016, in which CareSource purportedly promised that ProgenyHealth would be involved in the Indiana contract. Id. at ¶ 67. ProgenyHealth refers to a similar group of email exchanges occurring between September 2015 and November 2016, regarding the Georgia contract. Id. at ¶ 64. Then, in March 2016, the parties prepared a draft Delegated Services Agreement, which provided that ProgenyHealth would furnish services under the Georgia contract. Id. at ¶ 65. Likewise, in October 2016, CareSource forwarded a draft Delegated Services Agreement, which departed from the standard contract, for ProgenyHealth to perform services in Indiana. Id. at ¶ 68.

ProgenyHealth asserts that the numerous meetings, email exchanges, and draft Delegated Services Agreements amount to a promise and representation that Defendants would retain ProgenyHealth to provide services under both the Indiana and Georgia contracts. ProgenyHealth further alleges that it was

induced by these promises and representations, at its detriment, to hire and train additional personnel to accommodate the new programs in Indiana and Georgia. Id. at ¶ 70. Against this backdrop, ProgenyHealth brings suit against CareSource, CareSource Indiana, and CareSource Georgia ("Defendants"), alleging promissory estoppel, negligent misrepresentation, and fraudulent misrepresentation claims.

**II. Standard**

Federal Rule of Civil Procedure 12(b)(6) requires a court to dismiss a complaint if the plaintiff has failed to "state a claim on which relief can be granted." In evaluating a motion to dismiss, the court must take all well-pleaded factual allegations as true, but it is not required to blindly accept "a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Although a plaintiff is not required to plead detailed factual allegations, the complaint must include enough facts to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In conducting this evaluation, the court is permitted to consider exhibits attached to the complaint as well as the complaint itself. Fed. R. Civ. P. 10(c).

In conducting this analysis, the "court must take note of the elements a plaintiff must plead to state a claim." Santiago

4

v. Warminister Twp., 629 F.3d 121, 130 (3d Cir. 2010)(internal quotations and alterations omitted). The court should then "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. "Finally, where there are well pleaded-factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.

**III. Discussion**

**(A) Unjust Enrichment (Counts I and II)**

Under Pennsylvania law, a plaintiff may recover for unjust enrichment by proving: "[1] benefits conferred on defendant by plaintiff, [2] appreciation of such benefits by defendant, [3] and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." Discover Bank v. Stucka, 33 A.3d 82, 88 (Pa. Super. Ct. 2011)(internal quotations omitted).

In order for the benefit received to be unjust, a plaintiff must show that it conferred the benefit with a "reasonable expectation of compensation." Masterson v. Fed. Express Corp., 269 F.R.D. 439, 444 (M.D. Pa. 2010). A benefit need not be monetary; it can be "'any form of advantage.'" Zvonik v. Zvonik, 435 A.2d 1236, 1241 (Pa. Super. Ct. 1981)(quoting Restatement

(First) of Restitution § 1, cmt. B (Am. Law Inst. 1937)). However, "[a] benefit conferred is not unjustly retained if a party confers the benefit with the hope of obtaining a contract." Burton Imaging Group v. Toys "R" Us, Inc., 502 F.Supp.2d 434, 440 (E.D. Pa. 2007).

**(i) Indiana Contract**

A plaintiff cannot reasonably expect to be compensated for a benefit conferred in the pursuit of a contract. See id. at 440. Here, that is precisely the case and Plaintiff fails to suggest otherwise. ProgenyHealth, in hopes of being retained under the Indiana contract, permitted Defendants to use its name and prior achievements in its response to the Indiana RFP. While the Defendants may have been enriched by ProgenyHealth, the benefit received was not unjust. See id. at 442.

Additionally, ProgenyHealth explicitly stated that Defendants had "requested that ProgenyHealth submit Letters of Intent to ensure that CareSource Indiana and CareSource Georgia could use ProgenyHealth's information in conjunction with their responses to the requests for proposal." (Compl. at ¶ 17). There is no allegation that ProgenyHealth was to be compensated for Defendants' use of its information, name, or reputation. ProgenyHealth has also not alleged that the Defendants made any statements suggesting, either implicitly or explicitly, that it

would compensate ProgenyHealth for its use of ProgenyHealth's name and reputation in its response to the Indiana RFP. See Burton Imaging Group, 502 F.Supp.2d at 442 (finding Plaintiff's expectation to be compensated unreasonable when Defendant did not indicate, by actions or words, that it would pay Plaintiff for the benefit received).

We hold, therefore, that Plaintiff has failed to state a claim for unjust enrichment under the Indiana contract.

**(ii) Georgia Contract**

Plaintiff likewise asserts that the Defendants were unjustly enriched with regard to the Georgia contract. Plaintiff's claim for unjust enrichment under the Georgia contract is nearly identical to its corresponding claim under the Indiana contract. It fails for the same reasons discussed above.

**(B) Promissory Estoppel (Count III and Count IV)**

Under Pennsylvania law, a plaintiff may recover for promissory estoppel when: "'(1) the promisor made a promise that would reasonably be expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise.'" Pratter v. Penn Treaty Am. Corp., 11 A.3d 550, 562 (Pa. Commw. Ct. 2010)(quoting Peluso v. Kistner, 970 A.2d 530, 534 (Pa.

Commw. Ct. 2009)). "[A] broad and vague implied promise" is not sufficient to sustain a promissory estoppel claim. See C & K Petroleum Prod., Inc. v. Equibank, 839 F.2d 188, 192 (3d Cir. 1988)(affirming district court's dismissal of promissory estoppel claim where there was "no express promise"); see also Ankerstjerne v. Schulmberger, Ltd., 155 F.App'x 48, 51 (3d Cir. 2005)(holding a senior manager's assurance that an employee would receive a bonus was "too vague" to support promissory estoppel claim).

Defendants argue that the first element is not satisfied because (1) Plaintiff has not pointed to an explicit statement by CareSource that amounts to a promise or misrepresentation and (2) Plaintiff has not demonstrated a reasonable expectation of action or forbearance.[2]

**(i) Existence of a Promise**

Plaintiff asserts that it detrimentally relied upon Defendants' representations and promises to retain ProgenyHealth under the Indiana and Georgia contracts when it "hir[ed], train[ed], and pa[id] the salaries of additional personnel . . . as well as the loss of other potential opportunities to provide

---

[2] Defendants also claim that enforcement of their statements is unnecessary to avoid injustice. Because we find that Plaintiffs have failed to allege an actionable promise, we decline to consider this alternative argument for dismissal.

services in other states and/or with other providers." (Compl. at ¶¶ 91, 101).

Plaintiff alleges that, in addition to numerous email exchanges, there were 104 meetings between ProgenyHealth and Defendants, and that throughout them "CareSource executives and employees repeatedly assured ProgenyHealth that CareSource would retain ProgenyHealth . . . under the Indiana and Georgia Contracts." Id. at ¶¶ 58-60. Plaintiff further alleges that it reasonably relied on these assurances when it hired and trained additional personnel to perform under both contracts. Id. at ¶ 70.

Even accepting these allegations as true, they do not entitle Plaintiff to relief on a promissory estoppel claim. Plaintiff refers to several statements made by Defendants, all of which suggest that Defendants intended to retain Plaintiff at some later date. Id. at ¶¶ 64, 67, 69. But assurances that a contract will be executed at some point in the future are not the sort of express promise that can support a promissory estoppel claim. See Ankerstjerne, 155 F. App'x at 51; C & K Petroleum, 839 F.2d at 192; Landan v. Wal-Mart Real Estate Bus. Tr., No. 2:12CV926, 2016 WL 5253329, at *9 (W.D. Pa. Sept. 22, 2016). The alleged statements are, on their face, simply assertions of Defendant's intent to execute a contract at a later time;

Plaintiff has not alleged that Defendants ever made any statement that could constitute a definite promise.

Plaintiff argues that the significant number of alleged remarks made by Defendants, draft agreements, and unexecuted Letters of Intent distinguish this case from those like <u>Ankerstjerne,</u> in which courts have held that a single indefinite statement did not amount to a promise. (Doc. No. 14, at 11). Yet, even when considering all the alleged statements and documents together, a definite promise cannot be discerned from them as a matter of law.

Plaintiff also points to Defendants' statements asserting that ProgenyHealth and Defendants were working as "partners" throughout negotiations. (Compl. at ¶ 69). But rather than illustrate the existence of an express promise to contract, these statements, in reference to both parties' efforts to come to an agreement, reinforce that no agreement had yet been made.

Thus, Plaintiff has failed to allege an express or "contract-like promise" made by Defendants. <u>See</u> <u>Peluso</u>, 970 A.2d at 534.

**(ii) Reasonable Expectation of Reliance**

Because we have already determined that Plaintiff failed to allege a definite promise by Defendants, it follows that there is

no promise that Defendants could have reasonably expected Plaintiff to rely upon.

**(C) Negligent and Fraudulent Misrepresentation (Counts V-VIII)**

Under Pennsylvania law, a party claiming fraudulent misrepresentation must show:

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

Bull Int'l, Inc. v. MTD Consumer Grp., Inc., 654 Fed. App'x 80, 104 (3d Cir. 2016)(quoting Gibbs v. Ernst, 583 Pa. 193, 647 A.2d 882, 889 (1994)). The elements of a negligent misrepresentation claim are identical to those of a fraudulent misrepresentation claim, except that the defendant must have made the false representation negligently. Id. (citing Gibbs, 647 A.2d at 890).

Defendants advance the same two arguments for dismissal of both the negligent and fraudulent misrepresentation claims. They assert that Plaintiff neither "alleged a definite misrepresentation by CareSource" nor "justifiably reli[ed] on that misrepresentation." (Doc. No. 11-2, at 8).

For the same reasons delineated under our discussion of the promissory estoppel claims, we hold that Plaintiff failed to allege the existence of an express misrepresentation that

Plaintiff could have justifiably relied upon. Thus, the negligent and fraudulent misrepresentation claims, under both the Indiana and Georgia contracts, must be dismissed.[3]

**IV. Conclusion**

For the foregoing reasons, the instant motion is granted. An appropriate Order follows.

---

[3] In accordance with Fed. R. Civ. P. 9(b), a plaintiff alleging fraudulent misrepresentation must do so "with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007)(internal quotations and alterations omitted). Here, Defendants have not relied on the stricter standard in Rule 9, but we pause only to note that Plaintiffs' claims fail whether judged under Rule 9 or the more lenient standard embodied by Rule 8.